UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| CYNTHIA M. LEMONS, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:16-CV-476-DCP |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Deputy Commissioner for Operations, | ) | |
| performing the duties and functions not | ) | |
| reserved to the Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 19]. Now before the Court is Plaintiff's Motion for Judgment on the Administrative Record and Memorandum in Support [Docs. 20 & 21] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 24 & 25]. Cynthia M. Lemons ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Nancy A. Berryhill ("the Commissioner"). For the reasons that follow, the Court will **DENY** Plaintiff's motion and **GRANT** the Commissioner's motion.

I.  PROCEDURAL HISTORY

On March 13, 2012, Plaintiff filed an application for supplemental security income benefits pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1385, claiming a period of disability that began on August 27, 2007. [Tr. 209, 233]. After her application was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 123-25]. A hearing was held on August 8, 2014. [Tr. 51-84]. At the request of Plaintiff's counsel, a supplemental

hearing was conducted on January 30, 2015, after the ALJ had ordered that consultative examinations be performed following the first hearing. [Tr. 32-50, 82-83]. On March 2, 2015, the ALJ found that Plaintiff was not disabled. [Tr. 8-31]. The Appeals Council denied Plaintiff's request for review [Tr. 1-6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on July 27, 2016, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II. ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant has not engaged in substantial gainful activity since March 13, 2012, the application date (20 CFR 416.971 et seq.).
>
> 2. The claimant has the following severe impairments: degenerative disc disease, osteoarthritis, and mood (bipolar) disorder. (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a). The claimant can lift and carry, push and pull ten pounds occasionally and less than ten pounds frequently. With normal breaks in an eight-hour day, she can sit for six hours and stand and/or walk for two hours; she can never climb ladders, ropes, or scaffolds; cannot crawl; and can only occasionally climb ramps and stairs, balance, stoop, and crouch. She can frequently kneel; cannot lift her arms above her shoulders; and can tolerate one out of eight hours of exposure to hazards. The claimant can understand and perform simple and detailed, but not multi-step detailed, tasks; can maintain concentration, persistence and pace for these tasks; can relate to co-workers and supervisors

for regular routines without intensive interaction; can relate to the general public on an occasional basis; and can adapt to gradual, and infrequent changes.

5. The claimant has no past relevant work. (20 CFR 416.965).

6. The claimant was born on January 29, 1969 and was 43 years old, which is defined as a younger individual age 18-44, on the date the application was filed. The claimant subsequently changed age category to a younger individual age 45-49 (20 CFR 416.963).

7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since March 13, 2012, the date the application was filed (20 CFR 416.920(g)).

[Tr. 13-26].

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV.  DISABILITY ELIGIBILITY

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant will only be considered disabled if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§ 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. § 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. § 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V. ANALYSIS

On appeal, Plaintiff contends that the ALJ committed two errors of law. First, Plaintiff submits that the ALJ erred in weighing the medical opinions of consultative examiner Jeffrey

Uzzle, M.D., and nonexamining state agency physician Morris Susman, M.D., both of whom opined manipulative limitations which were not included in Plaintiff's RFC. [Doc. 21 at 15-18]. Second, Plaintiff argues that the ALJ did not properly consider Plaintiff's testimony, rendering the ALJ's credibility finding unsupported by substantial evidence. [*Id.* at 18-22]. The Court will address each alleged error in turn.

### A. Medical Opinions of Dr. Uzzle and Dr. Susman

Plaintiff contends that the ALJ failed to provide a legally sufficient basis for discounting the manipulative limitations opined by Dr. Uzzle and Dr. Susman.

Dr. Susman reviewed the record at the initial level of the agency's disability determination, completing a "Physical Residual Functional Capacity Assessment" on June 5, 2012. [Tr. 89-91]. Therein, Dr. Susman opined that Plaintiff could perform a reduced range of sedentary work[1] that, in pertinent part, included manipulative restrictions of occasional reaching (including overhead) and handling (gross manipulation). [Tr. 90-91]. Dr. Susman attributed the limitation of overhead reaching to Plaintiff's medical history of cervical fusions, while the handling limitation was due to Plaintiff exhibiting 4/5 strength in her upper extremities in addition to chronic neck pain. [Tr. 91]. In October 2012, at the reconsideration level, a second reviewing state agency physician, Marvin Bittinger, D.O., likewise opined that Plaintiff could perform a reduced range of sedentary work, but he did not assess any manipulative limitations. [Tr. 103-04].

---

[1] "Sedentary work" is defined as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. § 416.967(a). A claimant must be able to walk and stand occasionally to perform sedentary work. *Id.*

On September 9, 2014, Dr. Uzzle performed a detailed consultative examination, which also included a review of Plaintiff's medical records. [Tr. 1982-94]. Dr. Uzzle found that Plaintiff was a "poor and vague historian," who did "not present in a completely straightforward manner." [Tr. 1991-92]. Plaintiff's medical history was recounted, which included, among other things, whole body pains and multiple spinal surgeries. [*Id.*]. Plaintiff's husband accompanied her and assisted Plaintiff's mobility endeavors. [Tr. 1994]. Dr. Uzzle found the husband's assistance hindered, rather than helped, Plaintiff move about and further interfered with Dr. Uzzle's ability to accurately assess Plaintiff's limitations. [*Id.*]. Plaintiff moved slowly and in a guarded manner, using a straight tip cane, and would not attempt toe walking, heel walking, deep knee bending, or tandem walking. [Tr. 1993]. Dr. Uzzle noted that Plaintiff walked the same with and without her cane. [Tr. 1993].

On examination, Plaintiff demonstrated various pain behaviors and muscle guarding, myalgias, and arthralgias throughout her musculoskeletal exam of the spine and her extremities. [*Id.*]. Dr. Uzzle noted "obvious inconsistencies in comparing formal versus informal range of motion testing," thereby making the testing unreliable. [*Id.*]. Straight leg raises in the sitting and supine position caused lower back pain and nonradicular leg pain at 30 degrees with exaggerated pain behavior responses. [Tr. 1994]. Phalen's and Tinel's testing of the wrists caused nonanatomic responses and complaints. [*Id.*]. Additional testing demonstrated no atrophy, negative Hoffman, Romberg, clonus, and Babinski testing, and Plaintiff exhibited 12-PSI right sided grip strength and 10-PSI left sided grip strength. [*Id.*]. With encouragement, Plaintiff's strength testing was "pretty good approaching 5/5 in all four extremities," her muscle tone was normal, and "2/5 Waddell signs [were] present despite obvious nonorganic presentation" during the examination. [*Id.*].

7

In conclusion, Dr. Uzzle assessed chronic pain syndrome with nonorganic findings, noting that Plaintiff's multiple comorbid medical conditions and spinal surgeries provided some objective evidence that Plaintiff experienced pain. [*Id.*]. Dr. Uzzle assessed the following functional limitations: Plaintiff could lift and carry up to 10 pounds frequently and up to 20 pounds occasionally; she could sit for two hours and stand and walk for 30 minutes at one time but could sit for six hours and stand and walk for three hours total in an eight-hour workday; she could occasionally reach overhead and in all other directions, handle, finger, feel, and push or pull; she could occasionally use her feet to operate foot controls; she could occasionally climb stairs and ramps, stoop, kneel, crouch, and crawl but never climb ladders or scaffolds; she could be exposed to pulmonary irritants frequently, vibrations occasionally, but never unprotected heights, moving mechanical parts, or operate a motor vehicle; and she could perform daily living activities such as shop, use public transportation, prepare simple meals, and care for her personal hygiene. [Tr. 1983-87].

After reviewing the opinions of the state agency medical sources, the ALJ assigned "some weight" to Dr. Uzzle's opinion, finding Plaintiff's limitation to occasional handling and fingering unsupported by the evidence. [Tr. 24]. The ALJ observed that Dr. Uzzle's examination findings, which included intact grip strength, normal muscle tone, and, by the physician's own account, unreliable range of motion and Tinel's and Phalen's testing, undermined the manipulative restrictions assessed. [*Id.*]. The ALJ then assigned "great weight" to Dr. Uzzle's finding that Plaintiff did not require the use of a cane due to observations made during the examination, Plaintiff's intact strength, and her inconsistent presentation. [*Id.*].

Similarly, the ALJ assigned "some weight" to Dr. Susman's opinion, but discounted the portion of the opinion regarding Plaintiff's handling limitations. [*Id.*]. The ALJ noted that while

8

Dr. Susman opined about limitations in Plaintiff's abilities to reach and handle, the record lacked any documentation of problems with Plaintiff's hands or wrists. [*Id.*]. In addition, the ALJ pointed out that Dr. Uzzle's examination records indicated that Plaintiff demonstrated intact strength, sensation, and good grip strength in her upper extremities. [*Id.*]. Ultimately, the ALJ assigned "great weight" to the opinion of Dr. Bittinger, a nonexamining state agency medical consultant who evaluated Plaintiff's claim at the reconsideration level of agency review [Tr. 103-04], noting "it is most consistent with the credible evidence, which demonstrates intact strength and does not support the [Plaintiff's] allegations of hand/wrist problems," [Tr. 24].

Plaintiff argues that Dr. Uzzle's manipulative restrictions are supported by his examination findings, including limited range of motion of the spine and shoulders, various pain behaviors and complaints, having to move slowly with the assistance of her husband, positive straight leg raise testing, and decreased sensation in the lower extremities. [Doc. 21 at 16]. With regard to Dr. Susman, Plaintiff contends that because the physician attributed the manipulative limitations to Plaintiff's history of cervical fusion, reduced strength in her upper extremities, and chronic neck pain, it was illogical for the ALJ to discount the limitations simply because the record did not document "a specific hand or wrist impairment." [*Id.* at 17]. As a result, Plaintiff submits that the ALJ impermissibly substituted his own interpretation of the evidence for the medical findings reached by Dr. Uzzle and Dr. Susman. [*Id.*].

The Court observes that opinions from nontreating and nonexamining state agency physicians are weighed "based on the examining relationship (or lack thereof), specialization, consistency, and supportability. . . ." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)). "Other factors 'which tend to support or contradict the opinion' may be considered in assessing any type of medical opinion." *Id.* (quoting 20 C.F.R.

9

§ 404.1527(c)(6)). "Although the ALJ may not substitute his opinion for that of a physician, he is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009).

The ALJ alone is tasked with the responsibility of assessing a claimant's RFC. 20 C.F.R. § 416.1546(c). Accordingly, the "ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe*, 342 F. App'x at 157. Rather, "[t]he 'playing doctor' prohibition comes into play when the ALJ 'either reject[s] a doctor's medical conclusion without other evidence [or] draw[s] medical conclusions himself about a claimant without relying on medical evidence." *Hill v. Astrue*, No. 5:12CV-00072-R, 2013 WL 3293657, at *3 (W.D. Ky. June 28, 2013), *aff'd sub nom.*, *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547 (6th Cir. 2014) (quoting *Armstrong v. Barnhart*, 287 F.Supp.2d 881, 887 (N.D. Ill. 2003)).

In the instant matter, the Court finds that the ALJ cited to specific medical evidence and examination findings in rejecting the manipulative limitations assessed by Dr. Uzzle and Dr. Susman. Despite Dr. Uzzle assessing occasional limitations in reaching and handling, the ALJ found the limitations contradicted by examination findings which included intact grip strength, normal muscle tone, and unreliable test results. An ALJ may reject limitations that are inconsistent with clinical signs and symptoms exhibited during a physical examination. *See* 20 C.F.R. § 416.927(c)(3)-(4) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion," and "the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"). While Plaintiff cites to limited range of motion in her spine and shoulders as evidence to support the manipulative restrictions, Dr. Uzzle himself noted that Plaintiff's testing in this

regard was unreliable, as were her Tinel's and Phalen's testing. [Tr. 1993-94]. The ALJ was not obligated to accept unreliable test results as substantial evidence of what Plaintiff can and cannot do. Furthermore, while Plaintiff points to her various complaints of pain and having to receive assistance from her husband, Dr. Uzzle found that Plaintiff was not a reliable historian, her pain behaviors were exaggerated, and the assistance offered by Plaintiff's husband appeared to hinder, rather than help, Plaintiff's mobility. Finally, the Court is uncertain how other examination findings cited by Plaintiff, such as decreased sensation in the lower extremities, supports manipulative restrictions of the hands.

The Court is likewise unpersuaded by Plaintiff's argument that the ALJ substituted his own opinion for that of Dr. Susman's opinion. The ALJ cited to specific medical evidence—Dr. Uzzle's examination findings and Dr. Bittinger's competing opinion—in concluding that Plaintiff's RFC did not warrant manipulative limitations. *Cf. Stallworth v. Astrue*, No. 3:08cv00036, 2009 WL 335317, at *9 (S.D. Ohio, Feb. 10, 2009) ("[A]n ALJ must not substitute his own judgment for a physician's opinion without relying on other evidence or authority in the record.") (quoting *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000)). Moreover, the ALJ did not reject Dr. Susman's opinion on the basis that the record lacked "a specific hand or wrist impairment," as argued by Plaintiff. Instead, the ALJ observed that the record did not document any *problems* with Plaintiff's hands or wrists. [Tr. 24].

Plaintiff additionally complains that Dr. Bittinger's opinion could not have provided substantial evidence in this case because it was rendered over two years before the ALJ issued his decision, and therefore, Dr. Bittinger did not have the benefit of reviewing later generated medical

evidence. [Doc. 21 at 17].[2] The record reflects that Dr. Bittinger evaluated Plaintiff's claim at the reconsideration level of agency review. [Tr. 99-100, 103-04]. While he opined that Plaintiff could perform less than the full range of sedentary work, Dr. Bittinger did not include manipulative limitations [Tr. 104], leading the ALJ to conclude that Dr. Bittinger's opinion was consistent with objective test results indicating intact strength that contradicted Plaintiff's allegation of hand/wrist problems [Tr. 24]. With respect to opinions of nonexamining physicians, they can be given weight "only insofar as they are supported by evidence in the case record." Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *2 (July 2, 1996). Here, the Court finds that the ALJ did not err by relying on the opinion of Dr. Bittinger because his finding that Plaintiff did not have manipulative restrictions is supported by Plaintiff's intact grip strength, normal muscle tone, and unreliable range of motion, Tinel's, and Phalen's testing. Moreover, the ALJ's decision makes clear that Dr. Bittinger considered later submitted evidence, including Dr. Uzzle's opinion, in conjunction with all of the relevant evidence of record in assessing Plaintiff's RFC. *See Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013) ("When an ALJ relies on a non-examining source who did not have the opportunity to review later submitted medical evidence," our appellate court "require[s] some indication that the ALJ at least considered these [new] facts before giving greater weight to an opinion that is not based on a review of a complete case record."); *Kelly v. Comm'r of Soc. Sec.*, 314 F. App'x 827, 831 (6th Cir. 2009) ("[A]bsent a clear showing that the new evidence renders the prior opinion untenable, the mere fact that a gap exists does not warrant the expense and delay

---

[2] Plaintiff also suggests that Dr. Bittinger's opinion is unreliable because the ALJ ordered a consultative examination despite Dr. Bittinger's opinion already existing in the record. [Doc. 21 at 17-18]. The Court observes that Plaintiff's contentions would likewise diminish the supportability of Dr. Susman's opinion as he rendered his opinion earlier than Dr. Bittinger, and therefore would have reviewed even less evidence.

of a judicial remand.").

Accordingly, the Court finds the ALJ properly considered and weighed the medical opinions of record, and Plaintiff's arguments to the contrary are without merit.

**B.     Plaintiff's Credibility**

Plaintiff also contends that the ALJ's credibility determination is not supported by substantial evidence, because the ALJ did not properly consider Plaintiff's testimony.

In evaluating complaints of pain, an ALJ may properly consider the credibility of the claimant." *Walters*, 127 F.3d at 531. "[D]iscounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Id.* The ALJ's finding regarding credibility "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Id.* Nonetheless, the ALJ's "decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

The ALJ cited to several reasons why Plaintiff's subjective allegations were inconsistent with other evidence of record. [Tr. 22-23]. First, the ALJ noted that in March 2012, Plaintiff reported she was caring for her 93-year-old mother who lived with her and her husband. [Tr. 20, 22, 364-65]. The ALJ found Plaintiff's ability to care for her mother at odds with her depiction of limited daily activities and incompatible with her physical and emotional status which Plaintiff had testified essentially left her bedridden and reliant on her husband for her needs. [Tr. 20]. Second, while Plaintiff testified that her husband was the sole performer of chores, meal

13

preparation, and shopping, the ALJ found Plaintiff's testimony undermined by medical records that documented that Plaintiff's husband had been involved in a car accident which rendered him unable to stand or walk for a significant amount of time. [Tr. 20, 22, 399, 407, 411]. Third, the ALJ found that Plaintiff's ability to travel back and forth to help another ailing family member in May 2013, inconsistent with Plaintiff's complaints. [Tr. 20, 22, 405]. Finally, the ALJ referenced a May 2012 form completed by Plaintiff as evidence that Plaintiff engaged in leisure activities such as cooking, going to church, and fishing. [Tr. 22, 1963].

In addition to the above referenced evidence of Plaintiff's activities, the ALJ cited to Dr. Uzzle's examination findings—range of motion testing that yielded results that were significantly more restrictive than informal observations, nonanatomic responses and complaints with Tinel's and Phalen's testing, Plaintiff's husband's inference with her mobility, and 2/5 Waddell signs — as evidence that conflicted with Plaintiff's testimony. [Tr. 22]. The ALJ also cited to Dr. Uzzle's conclusion that Plaintiff's presentation was not entirely straightforward during the examination. [*Id.*].

With regard to the ALJ's credibility findings, Plaintiff contends it was improper for the ALJ to conclude that her husband was incapable of caring for her to the extent alleged because she never testified that the pain her husband suffered as a result of his car accident was so severe as to prevent him for caring for her,. [Doc. 21 at 20]. But in making his finding, the ALJ cited to treatment records, not Plaintiff's testimony, which document that Plaintiff's husband was injured so severely that he could not stand. [Tr. 20, 22, 399, 407, 411]. The Court therefore finds that this evidence provides a reasonable basis for the ALJ's conclusion.

Plaintiff next argues that Dr. Uzzle's examination does not conflict with her subjective complaints because Dr. Uzzle ultimately concluded that some objective evidence existed to

support Plaintiff's complaints of pain. [Doc. 21 at 21]. However, as discussed above, the ALJ appropriately cited to inconsistencies between Dr. Uzzle's examination findings and his conclusions, and therefore, the ALJ was not obligated to uncritically accept the limitations assessed by Dr. Uzzle. As to the leisure activity form completed by Plaintiff, Plaintiff submits that the form only asked which activities Plaintiff enjoyed and that she did not actually engaged in any of the listed activities. [Doc. 21 at 21]. The Court agrees with Plaintiff that the form only indicated activities Plaintiff enjoyed. Nonetheless, given the ALJ's other appropriate reasons for finding that Plaintiff's subjective allegations were not entirely credible, including Plaintiff's ability to care for other relatives, the Court finds substantial evidence supports the ALJ's credibility determination.

Plaintiff further argues that the ALJ's finding that Plaintiff's assertions were not "believable" suggests that the ALJ assessed Plaintiff's truthfulness, rather than the credibility of her symptoms. [Doc. 21 at 19] (quoting Tr. 22). The Commissioner concedes that the language used by the ALJ "was less than optimal, as agency ruling after the ALJ's decision have clarified that the credibility determination is not to be a judgment on Plaintiff's character, but rather an assessment of the consistency between Plaintiff's subjective complaints and the other evidence of record." [Doc. 25 at 14] (citing Soc. Sec. Rul. 16-3p, 2016 WL 1237954, at *1 (Mar. 28, 2016)). Nonetheless, the Commissioner argues that despite the language used by the ALJ, the ALJ complied with the Commissioner's regulations and rulings promulgated for assessing subjective complaints. [*Id.*]. The Court agrees with the Commissioner and finds that in discounting Plaintiff's credibility, the ALJ's cited reasons are supported by the record and provide a reasonable

basis for finding Plaintiff's symptoms and pain less severe than alleged.[3] Therefore, the Court finds the ALJ's credibility determination supported by substantial evidence, and Plaintiff's arguments to the contrary are not well taken.

VI.     **CONCLUSION**

Based on the foregoing, Plaintiff's Motion for Judgment on the Administrative Record [**Doc. 20**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 24**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

*Debra C. Poplin*
Debra C. Poplin
United States Magistrate Judge

---

[3] Plaintiff also suggests that the ALJ improperly considered a pain management treatment note from March 2012 as reason for discounting Plaintiff's credibility. [Doc. 21 at 19-20]. The ALJ cited to the treatment note which documented that Plaintiff had taken all of her medication after a back injury and she was warned she would be discharged from treatment if this happened again. [Tr. 19, 33]. The ALJ noted that no subsequent treatment records were provided from the medical source. [Tr. 19]. Plaintiff argues that the ALJ's observation improperly implies that Plaintiff was discharged from treatment for abusing medication. [Doc. 21 at 20]. In assessing Plaintiff's credibility, however, the ALJ did not mention or make an adverse finding regarding this treatment note. [Tr. 22]. Moreover, the Court observes that this particular treatment note was not addressed in isolation by the ALJ but was one of many medical records fully addressed by the ALJ in discussing Plaintiff's pain management treatment. [Tr. 19-21].